679 So.2d 795 (1996)
SECURITY BANK, N.A., Appellant,
v.
BELLSOUTH ADVERTISING & PUBLISHING CORPORATION, Appellee.
No. 94-2166.
District Court of Appeal of Florida, Third District.
July 24, 1996.
Rehearing Denied October 9, 1996.
*797 Fitzgerald & Portuondo and Michael M. Hernandez, Miami, for appellant.
Howard W. Mazloff, Miami, for appellee.
Before JORGENSON,[*] COPE and GREEN, JJ.
COPE, Judge.
Security Bank, N.A., appeals the denial of its motion to set aside a final judgment. We affirm in part and reverse in part.
BellSouth Advertising & Publishing Corporation obtained a judgment against Garfield & Associates, P.A., for $36,576. Garfield was a customer of Security Bank. BellSouth served the Bank with a writ of garnishment, seeking any funds of Garfield which the Bank was holding. BellSouth obtained a default against the Bank. Without any further notice to the Bank the court entered judgment against it for $36,576the same amount as BellSouth's underlying judgment against Garfield. Two days after the filing of judgment, the Bank served a motion to set aside the final judgment. The trial court denied the motion, and this appeal follows.

I.
The Bank argues that the trial court erred by denying the motion to set aside the default entered against it. The Bank contends that it has satisfied all of the *798 requirements for setting aside a default, namely, by showing (a) that the default was entered on account of excusable neglect, (b) that the Bank has a meritorious defense, and (c) that the Bank acted with due diligence in moving to set aside the default.[1] The Bank argues that both the default and final judgment must be set aside.
We find no error in the trial court's refusal to set aside the default on liability. In order to obtain relief from the default, it was necessary for the Bank to show, among other things, excusable neglect. See Lacore v. Giralda Bake Shop, Inc., 407 So.2d 275, 276 (Fla. 3d DCA 1981). With certain exceptions not applicable here, a party must set forth the facts demonstrating excusable neglect in an affidavit or by other sworn proof. See Santucci Armando, S.C.L. v. Plazza, 658 So.2d 1169 (Fla. 2d DCA 1995); Blimpie Capital Venture, Inc. v. Palms Plaza Partners, Ltd., 636 So.2d 838, 840 (Fla. 2d DCA 1994); Inter-Atlantic Insurance Services, Inc. v. Hernandez, 632 So.2d 1069, 1070 (Fla. 3d DCA 1994); Vanguard Group, Inc. v. Vanguard Security, Inc., 409 So.2d 1219 (Fla. 3d DCA 1982); B.C. Builders Supply Co., Inc. v. Maldonado, 405 So.2d 1345, 1348 (Fla. 3d DCA 1981); T.I.E. Communications, Inc. v. Toyota Motors Center, Inc., 391 So.2d 697, 698 (Fla. 3d DCA 1980); Metcalf v. Langston, 296 So.2d 81, 85-86 (Fla. 1st DCA), cert. dismissed, 302 So.2d 414 (Fla. 1974); GACL, Inc. v. Zeger, 276 So.2d 552, 553 (Fla. 3d DCA 1973).[2] Here the facts constituting excusable neglect were set forth only in an unsworn motion, and were unsupported by any affidavit or other proof. "[T]he trial court properly refused to set aside the defendants' default where the motion seeking such relief consisted of mere representations of counsel unsupported by proof showing any excusable neglect...." Vanguard Group, Inc., 409 So.2d at 1219. We therefore affirm the refusal to set aside the default on the issue of liability.

II.
Although the default on liability will stand undisturbed, the Bank's motion should have been granted insofar as it sought to set aside the final judgment on damages.

A.
By its writ of garnishment plaintiff BellSouth sought to obtain from the Bank whatever money Garfield, the bank customer, had on deposit there. The writ sought, in other words, to recover an unliquidated sum from the Bank. It is well settled that when a plaintiff obtains a default in a suit for unliquidated damages, the default only establishes liability. It remains necessary for the plaintiff to prove its damages at a hearing after notice to the defaulting party.
It is clear from examination of the record that the plaintiff and the court treated the garnishment writ as if it sought a liquidated sum, not an unliquidated sum. Upon default, the court simply entered an ex parte final judgment in favor of plaintiff for the full amount of plaintiff BellSouth's judgment against Garfield$36,576. The record contains no proof by plaintiff of the amount of Garfield's funds the Bank was holding, nor does the record reflect any notice to the Bank of the final hearing on damages. The plaintiff and the court assumed that the legal effect of a default in garnishment was to make the garnishee Bank automatically liable for the full amount of the plaintiff's $36,576 judgment against debtor Garfield.

B.
The garnishment statute allows plaintiff BellSouth to satisfy its judgment against *799 debtor Garfield by garnishing any of Garfield's money or property which is held by the garnishee Bank. § 77.06(1) Fla.Stat. (1993). The statute states:
77.06 Writ; effect.
(1) Service of the writ shall make garnishee liable for all debts due by him to defendant and for any tangible or intangible personal property of defendant in his possession or control at the time of the service of the writ or at any time between the service and the time of his answer.
Id. (emphasis added). Under the statute, the garnishee Bank is only responsible for any of Garfield's funds the Bank actually had in its possession.
For one hundred years, Florida courts have said that a garnishment plaintiff (BellSouth) is properly viewed as standing in the shoes of the original defendant debtor (Garfield). BellSouth cannot recover more from the Bank than could Garfield if Garfield sued the Bank for the same funds. Writing in a default garnishment context, the Florida Supreme Court has said:
Judgment creditors derive their right to proceed against a garnishee only by virtue of the fact that the garnishee holds money or property owed to the judgment debtor. Trial judges should exercise their discretion in such a way as to insure that the judgment creditor receives no greater rights against a garnishee than would have been available to the judgment debtor in a proceeding against the garnishee. Reeves v. Don L. Tullis and Assoc.,Inc., 305 So.2d 813 (Fla. 1st DCA 1975).
United Presidential Life Insurance Co. v. King, 361 So.2d 710, 713 (Fla.1978).
The garnishee is not, by service of the writ, to be placed in any worse condition than if the defendant, his creditor, had brought suit upon the claim which is garnished. As to the garnishee, the plaintiffs take the shoes of the defendant, the principal debtor, and can assert only the rights of the latter.
Howe v. Hyer, 36 Fla. 12, 17 So. 925, 926 (1895). Accord Foxbridge, Inc. v. Tartan-Laver Delray, Inc., 528 So.2d 1255, 1257 (Fla. 4th DCA 1988); Carpenter v. Benson, 478 So.2d 353, 354 (Fla. 5th DCA 1985), review denied, 488 So.2d 829 (Fla.1986).

C.
The next question is how to analyze the garnishment proceeding when there is a default. The statute and Form 1.907(a) of the Florida Rules of Civil Procedure both specify the text which must be set forth in a writ of garnishment. The writ directs the garnishee Bank to serve an answer stating, among other things, "whether the garnishee is indebted to defendant GARFIELD & ASSOCIATES, P.A., ... at the time of the answer or was indebted at the time of service of the writ, or at any time between such times...."[3] By service of the writ plaintiff BellSouth was trying to find out how much of Garfield's money the Bank was holding, and to obtain payment of it.
Clearly BellSouth's garnishment claim against the Bank was for an unliquidated sum, not a liquidated sum. As explained *800 in Bowman v. Kingsland Development, Inc., 432 So.2d 660 (Fla. 5th DCA 1983):
A default also admits the plaintiff's entitlement to liquidated damages due under the pleaded cause of action, but not unliquidated damages. Damages are liquidated when the proper amount to be awarded can be determined with exactness from the cause of action as pleaded, i.e., from a pleaded agreement between the parties, by an arithmetical calculation or by application of definite rules of law.... However, damages are not liquidated if the ascertainment of their exact sum requires the taking of testimony to ascertain facts upon which to base a value judgment.... A defaulting party has a due process entitlement to notice and opportunity to be heard as to the presentation and evaluation of evidence necessary to a judicial determination of the amount of unliquidated damages. Protection of this right is provided by Florida Rule of Civil Procedure 1.080(h)(1) and the last sentence in Rule 1.440(c).
Id. at 662-63 (emphasis in original, citations omitted)[4]; see also Tand v. C.F.S. Bakeries, Inc., 559 So.2d 670, 671 (Fla. 3d DCA 1990); Gulf Maintenance & Supply, Inc.v. Barnett Bank, 543 So.2d 813, 818 (Fla. 1st DCA 1989); Buffington v. Torcise, 504 So.2d 490, 491 (Fla. 3d DCA 1987); 33 Fla.Jur.2d Judgments and Decrees § 275 (1994). The setting of unliquidated damages without the required notice and without proof is regarded as fundamental error. Bowman, 432 So.2d at 663-64.
What, then, was the proper procedure for BellSouth to follow once it obtained entry of default on its unliquidated garnishment claim against the Bank? The required procedure was the same as in any suit for an unliquidated sum where there has been a default. Notice of trial on damages had to be given to the Bank as required by Rules 1.080(h)(1), 1.440(c), and 1.500(e). Bowman, 432 So.2d at 663; Hauser v. Dr. Chatelier's Plant Food Co., 350 So.2d 548, 549-50 (Fla. 2d DCA 1977).[5]
We are in general agreement with the analysis of this point in Trawick's Florida Practice and Procedure. After default, "[n]o judgment can be entered against the garnishee in excess of the amount remaining unpaid on the judgment against the garnishment defendant or in excess of the garnishee's liability to the garnishment defendant." Henry P. Trawick, Jr., Trawick's Florida Practice and Procedure, § 33-6, at 559 (1995 ed.) (emphasis added; footnote omitted). The plaintiff must propound discovery to the garnishee, or subpoena the garnishee to give evidence, in order "to ascertain the correct amount of the garnishee's obligation before entry of final judgment against the garnishee." Id. (footnote omitted).

D.
BellSouth argues, however, that the judgment is authorized by subsection 77.081(2) of the garnishment statute. We disagree. Subsection 77.081(2) applies only to prejudgment garnishment and has no application to the present case.
The statute relied on by BellSouth states:
77.081 Default; Judgment.
(1) If the garnishee fails to answer as required, a default shall be entered against him.
(2) On the entry of judgment for plaintiff, a final judgment shall be entered against the garnishee for the amount of plaintiff's claim with interest and costs. No final judgment against a garnishee shall be entered before the entry of, or in excess of, the final judgment against the original defendant with interest and costs. If the claim of the plaintiff is dismissed or judgment is entered against him the default against garnishee shall be vacated and judgment for his costs entered. *801 BellSouth claims in substance that on default this statute creates a penalty so that the garnishee becomes liable for the full amount of the plaintiff's underlying judgment against the original defendant. Accepting for present purposes the Bank's answer stating that it only held $374.21 of Garfield's money, BellSouth asserts that the statute imposes a hundredfold liability of $36,576. That is not a plausible interpretation of the statute.
"It is axiomatic that all parts of a statute must be read together in order to achieve a consistent whole. Where possible, courts must give full effect to all statutory provisions and construe related statutory provisions in harmony with one another." Forsythe v. Longboat Key Beach Erosion Control District, 604 So.2d 452, 455 (Fla. 1992) (emphasis in original; citations omitted). "Furthermore, construction of a statute which would lead to an absurd or unreasonable result ... should be avoided." State v. Webb, 398 So.2d 820, 824 (Fla.1981).
Section 77.01, Florida Statutes, describes the right to garnishment. Subsection 77.06(1), quoted in part II. B. supra, specifically defines the legal effect of service of a writ of garnishment. Under subsection 77.06(1), the garnishee is only liable for debts due by the garnishee to the defendant, and for tangible or intangible personal property of defendant which is in possession of the garnishee. Subsection 77.06(1) by its terms applies to all writs of garnishment. Subsection 77.081(2), relied on by BellSouth, must be read in pari materia with subsection 77.06(1). It follows that in a default situation, the garnishee's liability cannot exceed the amount prescribed by subsection 77.06(1).
What, then, is the purpose of subsection 77.081(2)? By its plain words, subsection 77.081(2) applies only to a prejudgment writ of garnishment.[6] The history of subsection 77.081(2) shows that it was drawn from prior statutory provisions dealing exclusively with prejudgment garnishment.[7] There are cases which assume, without discussion, that subsection 77.081(2) applies to post-judgment garnishment, see International Travel Card, Inc. v. R.C. Hasler, Inc., 411 So.2d 215, 216-17 (Fla. 1st DCA 1982); Sentry Indemnity Co. v. Hendricks Enterprises, 371 So.2d 1105, 1106 (Fla. 4th DCA 1979); Hauser v. Dr. Chatelier's Plant Food Co., 350 So.2d at 550, 1 Stephen B. Rakusin, Florida Creditors' Rights Manual § 2.08B.2, at 146 (1995), but there is no indication in those cases that the inapplicability of subsection 77.081(2) was called to the attention of the court.
We also conclude that BellSouth misapprehends the problem which subsection 77.081(2) is designed to address. On a prejudgment writ of garnishment the garnishee is allowed to withhold "double the amount which the writ of garnishment specifies as the amount plaintiff expects to recover...." § 77.19, Fla.Stat. When a prejudgment garnishee is holding double the amount which plaintiff seeks, and the prejudgment garnishee defaults, when should judgment be entered against the garnishee, and in what amount? Subsection 77.081(2) supplies the answer. Judgment cannot be entered against the garnishee until plaintiff has recovered judgment against the original defendant. Id. Furthermore, even if the garnishee is holding double the amount of plaintiff's claim, plaintiff is not entitled to a "double recovery" default judgment. Notwithstanding *802 that there has been a default, plaintiff can only obtain judgment against the garnishee for the amount of the plaintiff's judgment against the original defendant, plus interest and costs. Id. In sum, subsection 77.081(2) places a cap on plaintiff's recovery where a prejudgment garnishee has withheld amounts that exceed the plaintiff's judgment in the underlying action, plus interest and costs. The statute does not apply to the postjudgment garnishment proceeding at issue here, and in any event does not supplant the terms of subsection 77.06(1).[8]

E.
For the reasons stated, we conclude that a writ of garnishment under chapter 77 asserts a claim for an unliquidated sum. That being so, plaintiff was not allowed to obtain an ex parte default judgment. Instead, plaintiff was required to give notice of trial on damages, and adduce proof of the amount of money held by the Bank.
It is clear from the record before us that BellSouth never gave notice of a trial on damages, nor did BellSouth place any proof in the record regarding the amount of Garfield's money which the Bank was holding. In accordance with the Bank's motion, the final judgment should have been vacated.

III.
BellSouth argues that this court does not have jurisdiction in this appeal to reverse BellSouth's obtaining an improper ex parte default judgment. BellSouth contends that the Bank's motion to set aside final judgment is properly viewed as a motion for relief from judgment under Florida Rule of Civil Procedure 1.540(b)[9]; see also id. R. 1.500(d). BellSouth argues that its failure to give notice of trial on damages is not cognizable on a Rule 1.540 motion. BellSouth also argues that the granting of a judgment in excess of an amount authorized by law cannot be a matter for 1.540 relief. We disagree.

A.
For present purposes we assume, but do not decide, that this appeal is properly viewed as an appeal from a 1.540 order.[10] This court has granted Rule 1.540 relief where, after entry of partial summary judgment on liability, defendant was not given notice of trial on damages under Florida Rule of Civil Procedure 1.440(c). Shields v. Flinn, 528 So.2d 967, 968 (Fla. 3d DCA 1988). Accord Williams v. Direct Dispensing, Inc., 630 So.2d 1195, 1196-97 (Fla. 3d DCA 1994) (granting 1.540 relief); Tand v. C.F.S. Bakeries, Inc., 559 So.2d 670, 671 (Fla. 3d DCA 1990) (granting 1.540 relief); Gulf Maintenance & Supply, Inc. v. Barnett Bank, 543 So.2d at 817-18 (granting 1.540 relief). Consequently, the notice issue is cognizable under a Rule 1.540 motion.
*803 BellSouth argues, however, that this specific issuethe failure to give notice of trial on damageswas not raised in the trial court and therefore is not properly cognizable on appeal. It is our view that the error is fundamental. This court has said:
The rule that questions not presented to and ruled upon by the trial court are not reviewable on appeal is subject to the exception that an appellate court may consider and rule upon a constitutional or fundamental error when first raised or revealed on the record on appeal....
The error of imposing on a defendant compensatory damages which are not authorized by law and which are contrary to law is one that goes to the ultimate merits of the cause. Cf., American Home Assurance Co. v. Keller Industries, [347 So.2d 767, 772 (Fla. 3d DCA 1977)]. Moreover, such an error is one of constitutional dimension, for the reason that enforcement of such a judgment would constitute a taking of property from the defendant without due process of law.

Keyes Co. v. Sens, 382 So.2d 1273, 1276 (Fla. 3d DCA 1980) (emphasis added; citations omitted); see Bowman, 432 So.2d at 663-64, citing Parker v. Dekle, 46 Fla. 452, 35 So. 4 (1903). Here, a final judgment for damages was entered without trial and without due process notice. 
B.
This Court has also held that on a Rule 1.540 motion, relief can be granted where the plaintiff has obtained relief that is not supported by the pleadings or by substantive law applicable to the pleadings. Becerra v. Equity Imports, Inc., 551 So.2d 486, 488 (Fla. 3d DCA 1989). There defendants moved to set aside a default judgment under Rule 1.540. The trial court denied the motion because excusable neglect and due diligence were not sufficiently shown. Id. at 487. This court found no abuse of discretion in the trial court's determination regarding excusable neglect and due diligence.
This court went on, however, to reverse the order and grant relief from judgment on certain claims. This court said:
The power of the court to grant relief from a judgment entered on default has been accurately summed up as follows:
A default admits liability as claimed in the pleading by the party seeking affirmative relief against the party in default. It operates as an admission of the truth of the well pleaded allegations of the pleading, except those concerning damages. It does not admit facts not pleaded, not properly pleaded or conclusions of law. Fair inferences will be made from the pleadings, but forced inferences will not. The party seeking affirmative relief may not be granted relief that is not supported by the pleadings or by substantive law applicable to the pleadings. A party in default may rely on these limitations.

H. Trawick, Trawick's Florida Practice and Procedure § 25-4 at 348 (1988 ed.) (footnotes omitted).
. . . .

[A] motion to set aside a default judgment requires no allegations or showing of excusable neglect where the basis for the motion is that the allegations in the complaint do not entitle the plaintiff to relief. Magnificent Twelve, Inc., v. Walker, 522 So.2d 1031 (Fla. 3d DCA 1988).
Becerra v. Equity Imports, Inc., 551 So.2d at 488-89 (footnote and citations omitted; emphasis added).
Here BellSouth was granted "`affirmative relief ... that is not supported by ... substantive law applicable to the pleadings.'" Becerra v. Equity Imports, Inc., 551 So.2d at 488 (citation omitted). The writ of garnishment does not create a legally sufficient basis for imposing on a defaulting garnishee liability for the plaintiff's underlying judgment against the original defendant. Under authority of Becerra, this issue is cognizable on a 1.540 motion.
We also note that this issuethe proper measure of damages in a garnishment proceedingwas sufficiently preserved for appellate review. The Bank's papers filed below assert in substance (by way of showing a meritorious defense) that the Bank can only be held liable for so much of Garfield's *804 money as the Bank had in its possession.[11] Under this theory as well, the Bank is entitled to relief.

IV.
The order denying the Bank's motion to set aside the final judgment is affirmed insofar as the order refuses to set aside the default on liability.
The order is reversed insofar as it refuses to set aside the final judgment on damages. The cause is remanded with directions to grant the Bank's motion in part, vacate the final judgment on damages only, and conduct further appropriate proceedings consistent with this opinion.
COPE and GREEN, JJ., concur.
JORGENSON, Judge, dissenting.
A default and final default judgment on damages in a garnishment proceeding such as this should be either both affirmed or both reversedthere is no middle ground. Because I concur with the affirmance of the default on liability, I must respectfully dissent from the court's reversal of the final judgment on damages. I would instead affirm the trial court's order refusing to set aside the default and final judgment in its entirety.
The mere service of the writ of garnishment made the "garnishee liable for all debts due by him or her to defendant ... at the time of the service of the writ...." § 77.06(1), Fla.Stat. (1993). As stated in United Presidential Life Ins. v. King, 361 So.2d 710, 713 (Fla.1978), this initial liability upon service of the writ did not place the garnishee "in any worse condition than if defendant, his creditor, had brought suit upon the claim which is guaranteed." The court's opinion, however, holds that by subsequently defaulting, the garnishee bank incurred no greater liability than it had when it was served with the writ. This ignores the consequences of a default and the provisions of the next section of the statute:

The garnishee shall report in its answer and retain, subject to the provisions of s. 77.19 and subject to disposition as provided in this chapter, any deposit, account, or tangible or intangible personal property in the possession or control of such garnishee; and the answer shall state the name or names and addresses, if known to the garnishee, of the defendant and any other persons having or appearing to have an ownership interest in the involved property.
§ 77.06(2), Fla.Stat. (1993) (emphasis added). A primary purpose of the garnishee's answer is thus to establish the garnishee's position on the amount of assets in the garnishee's possession available to satisfy the garnishor's judgment against the defendant.
In this case, the amount of the judgment against the defendant was clearly stated in the writ and motion for writ of garnishment and is thus fully liquidated. See United States Fire Ins. Co. v. C & C Beauty Sales, Inc., 674 So.2d 169, 171 (Fla. 3d DCA 1996) ("Damages are liquidated when the proper amount to be awarded can be determined with exactness from the cause of action as pleaded.") (emphasis added) (quoting Bowman v. Kingsland Dev., Inc., 432 So.2d 660, 662 (Fla. 5th DCA 1983)). A garnishment is not like a case involving a standard first-party complaint, where a plaintiff has obtained a default on a defendant's liability and thereafter must prove up the unliquidated damages. By contrast, the first thing to be established in a garnishment proceeding such as this is how much of the depositor's money the bank holds to satisfy a previously-liquidated judgment debt. By refusing to answer, the garnishee responds to the plaintiff's *805 statutorily-authorized query, "How much of the defendant's money do you hold," with, "We are not going to tell you," and must pay the consequences for this recalcitrance. Otherwise, the sanction of default would be reduced to a nullity in a garnishment proceeding.
Our liberal standards for setting aside defaults upon a proper showing of diligence, excusable neglect, and a meritorious defense recognize the strong policy favoring trial on the merits and the severity of a default, where defenses on the merits are precluded. See, e.g., Cinkat Transp., Inc. v. Maryland Casualty Co., 596 So.2d 746 (Fla. 3d DCA 1992); Espinosa v. Racki, 324 So.2d 105 (Fla. 3d DCA 1975). The bank's failure to offer any record evidence of excusable neglect, due to either misfeasance of counsel or the unavailability of such evidence, is unfathomable. We should not, however, allow the unfortunate results of this failure to color our interpretation of the consequences of a default in a garnishment proceeding. In the same way that a defendant is less likely to be cavalier in its reaction to a personal injury suit claiming permanent brain damage than to one claiming a hangnail injury, a garnishee presumably would react more conscientiously to a writ indicating a judgment debt of ten million than to one claiming ten dollars. Here, for whatever reason, the bank has flouted a $36,576 garnishment claim and now should pay.[12]
NOTES
[*] Judge Jorgenson did not hear oral argument, but participated in the decision.
[1] Clearly the Bank acted with due diligence, having served its motion two days after the judgment was rendered. The Bank submitted an unsworn answer along with the motion. The answer asserts that the Bank held only $374.21 belonging to Garfield. The answer sufficiently states a meritorious defense. See Cinkat Transportation Inc. v. Maryland Casualty Co., 596 So.2d 746, 747 (Fla. 3d DCA 1992); Fortune Insurance Co. v. Sanchez, 490 So.2d 249 (Fla. 3d DCA 1986).
[2] In Metcalf v. Langston, the court noted that sworn "proof may be rendered unnecessary by stipulation of the parties, or by the party against whom relief is sought filing a responsive pleading to the motion or other pleading for relief admitting the allegations thereof. (Assuming the allegations are sufficient to justify under the law the granting of the relief sought.)" 296 So.2d at 86.
[3] The writ states, in part:

TO EACH SHERIFF OF THE STATE OF FLORIDA
YOU ARE COMMANDED to summon garnishee SECURITY BANK ... to serve an answer to this writ on plaintiff, or plaintiff's attorney, ... within 20 days after service on the garnishee, exclusive of the day of service and to file the original with the Clerk of this Court either before service on the plaintiff or plaintiff's attorney or immediately thereafter, stating whether the garnishee is indebted to defendant GARFIELD & ASSOCIATES, P.A., a Florida corporation at the time of the answer or was indebted at the time of service of the writ, or at any time between such times, and in what sum and what tangible and intangible personal property of the defendant the garnishee has in his possession or control at the time of the answer or had at the time of service of this writ, or at any time between such times, and whether the garnishee knows of any other person indebted to the defendant or who may have any of the property of the defendant in his possession or control. The amount set in plaintiff's motion is $36,576.00.
. . . .
Chapter 77.06 Florida Statutes: "Service of the writ shall make garnishee liable for all debts due by him to defendant, and for any tangible or intangible personal property of defendant in his possession or control at the time of the service of the writ or at any time between the service and the time of his answer."
[4] The Fifth District has questioned the continuing viability of Bowman on grounds not involved here. See West v. West, 534 So.2d 893, 895 n. 1 (Fla. 5th DCA 1988). Nevertheless, Bowman continues to accurately state the distinction between liquidated and unliquidated damages.
[5] There is a right to jury trial in a garnishment proceeding, § 77.08, Fla.Stat., although there was no jury trial demand in this case. Where there is no disputed issue of material fact, a motion for summary judgment with notice to the defaulting party is, of course, permissible.
[6] The first sentence of subsection 77.081(2) states, "On the entry of judgment for plaintiff, a final judgment shall be entered against the garnishee...." Id. (emphasis added). This sentence can only apply where the plaintiff has already served a prejudgment writ of garnishment on the garnishee.

The second sentence states, in part, "No final judgment against a garnishee shall be entered before the entry of, or in excess of, the final judgment against the original defendant...." Id. (emphasis added). Again, this addresses a prejudgment writ of garnishment.
The third sentence states, "If the claim of the plaintiff is dismissed or judgment is entered against him the default against garnishee shall be vacated...." Id. This circumstance arises only where there is a prejudgment writ of garnishment.
[7] Both the Note to section 77.081 of the Florida Statutes, and the annotation to chapter 77 of Florida Statutes Annotated report that section 77.081 is the successor to sections 77.20 and 77.21, Florida Statutes (1965). § 77.081 (Note), Fla.Stat. (1993); 6 Fla.Stat.Ann. 194 (1987). Former sections 77.20 and 77.21 dealt exclusively with prejudgment garnishment. See §§ 77.20,.21, Fla.Stat. (1965).
[8] As already indicated, if the garnishee is holding money or property worth less than the plaintiff's underlying judgment, then plaintiff's judgment against garnishee cannot exceed the amount specified by subsection 77.06(1). See also § 77.083, Fla.Stat.; Carpenter v. Benson, 478 So.2d at 354.
[9] The Bank also states that it views this proceeding as one under Rule 1.540. Inconsistently, the Bank has prosecuted this appeal as an appeal from a final judgment. Compare Fla.R.App.P. 9.130(a)(5) with id. R. 9.110.
[10] An argument can be made that this appeal is, as a matter of law, an appeal from the final judgment instead of an appeal from an order denying a motion for relief from judgment under Rule 1.540. The Bank's motion to vacate final judgment was served two days after the final judgment was filed. Consequently the motion was served within the time allowed for a motion for rehearing under Rule 1.530.

This court has held that a "motion to set aside order," filed within 10 days after entry of a final order, will be treated as a timely motion for rehearing under Rule 1.530. Meyerson v. Texsol, Inc., 385 So.2d 5, 6 (Fla. 3d DCA 1980); see Griffin v. Tauber-Manon Associates, Inc., 452 So.2d 577, 578 n. 2 (Fla. 3d DCA 1984); see also Salam v. Benmelech, 622 So.2d 592, 593 (Fla. 3d DCA 1993) (motion for modification of final judgment is properly viewed as a motion to alter or amend judgment under Rule 1.530(g)). If the Bank's motion to vacate final judgment is properly considered to be a timely motion for rehearing, then the notice of appeal is effective to initiate an appeal from the final judgment. Puga v. Suave Shoe Corp., 417 So.2d 678, 679-82 (Fla. 3d DCA 1981) (en banc).
We need not decide this procedural issue since it would make no difference in the outcome of this case.
[11] Even if not raised below, this court has treated an error of this type as fundamental. This court has said:

Although this issue was not directly raised by [appellant] either below or on appeal, the award of a judgment which has no legal foundationwhen, in other words, the plaintiff has recovered upon a nonexistent rightconstitutes fundamental error which we are required to notice and correct. Stevens v. Allegro Leasing, Inc., 562 So.2d 380 (Fla. 4th DCA 1990); Marks v. Delcastillo, 386 So.2d 1259, 1267-68 (Fla. 3d DCA 1980), review denied, 397 So.2d 778 (Fla.1981); Keyes Co. v. Sens, 382 So.2d 1273, 1276 (Fla. 3d DCA 1980).
Pet Fair, Inc. v. Humane Society of Greater Miami, 583 So.2d 407, 409 (Fla. 3d DCA 1991) (emphasis added).
[12] This result is consistent with the rationale of section 77.081 which makes the defaulting garnishee liable for the full amount of the plaintiff's claim with interest and costs. True, it is nowhere explicitly stated that section 77.081, which was part of the formerly separate prejudgment interest provisions, is intended to now apply to postjudgment garnishment as well. However, I agree with the cited holdings of the First, Second, and Fourth District Courts of Appeal that section 77.081 applies to postjudgment garnishments. I disagree with the court's assertion that this provision is in any way inconsistent with subsection 77.06(1). Subsection 77.06(1) makes the garnishee liable to the plaintiff for the assets of the garnishment defendant, whatever amount they may be, upon service of the writ. The garnishee's subsequent answer would address the specific amount of assets. The garnishee's refusal to answer compels the conclusion under subsection 77.081(2) that the garnishee holds sufficient assets to cover the full amount of the plaintiff's judgment plus interest and costs.

In the case of prejudgment garnishment, the legislature, with section 77.081, had enacted a provision which could, in the case of default, require a prejudgment garnishee bank to pay 100 times or more than the amount the defendant had on deposit. There is no basis for the court's reasoning that similar consequences could not be intended to also apply to the postjudgment garnishee merely because of their magnitude or severity. The courts of several other states have similarly recognized statutory provisions that impose full judgment-debt liability on the defaulting postjudgment garnishee. See, e.g., In re Pioneer Oil & Gas Co., 333 F.Supp. 1055, 1058 (E.D.La. 1971); Aluminum Co. of America v. Higgins, 5 Ark.App. 296, 635 S.W.2d 290, 291 (1982); Barnett Home Appliance Corp. v. Guidry, 224 So.2d 134, 136 (La.Ct.App.), writ refused, 254 La. 795, 226 So.2d 922 (1969); Conejos County Lumber Co. v. Citizens Savings & Loan Ass'n, 80 N.M. 612, 459 P.2d 138, 140 (1969); Bianco v. Pullo, 195 Pa.Super. 623, 171 A.2d 620, 626 (1961).